UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

----------------------------------------------------x

TRAVIS WOODS,
an individual,

        Plaintiff,

vs.

MAGUIRE CS, LLC,

        Defendant.

----------------------------------------------------x

CASE NO.: 6:22-cv-00873 (BKS/ATB)

## COMPLAINT

Plaintiff, TRAVIS WOODS, by and through his undersigned counsel, hereby files this Complaint and sues MAGUIRE CS, LLC (hereinafter "Maguire Chevrolet" or "Defendant") for declaratory and injunctive relief, compensatory damages, statutory damages, attorneys' fees, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA"), the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL"), and the New York State Civil Rights Law, N.Y. Civ. Rights Law § 40 *et seq.* ("NYSCRL"), and alleges:

## JURISDICTION AND PARTIES

1. This is an action for declaratory and injunctive relief pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* This Court is vested with original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

2. This is an action for compensatory damages and statutory damages pursuant to the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.,* and New York State Civil Rights Law, N.Y. Civ. Rights Law § 40 *et seq*. This Court is vested with supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

1

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

4. Plaintiff, TRAVIS WOODS, (hereinafter referred to as "MR. WOODS"), is a resident of the State of New York, Oneida County.

5. MR. WOODS is a qualified individual with a disability under the ADA, the NYSHRL, and the NYSCRL. MR. WOODS has paraplegia because of a spinal cord injury.

6. Due to his disability, MR. WOODS is substantially impaired in several major life activities and requires a wheelchair for mobility. Specifically, MR. WOODS is unable to walk, stand, or use his legs without assistance.

7. MR. WOODS has a valid New York driver's license and does not own a vehicle. However, MR. WOODS often borrows his girlfriend's vehicle which is equipped with permanent hand controls, and he is able to safely drive her vehicle.

8. Upon information and belief, MAGUIRE CS, LLC is a foreign limited liability company organized in the state of Delaware and doing business in Onondaga County.

9. Upon information and belief, MAGUIRE CS, LLC can be contacted at:

>C/O Maguire Family of Dealerships
>ATTN: Corporate Offices
>318 Elmira Road
>Ithaca, New York 14850

10. Upon information and belief, MAGUIRE CS, LLC is the owner and/or operator of Maguire Chevrolet of Baldwinsville, located at 112 Syracuse Street, Baldwinsville, New York 13204.

11. Defendant is obligated to comply with the ADA.

12. All events giving rise to this lawsuit occurred in the Northern District of New York,

Onondaga County, New York.

13. Defendant is a place of public accommodation, specifically a sales establishment that sells new and used cars, Chevrolet parts, and services Chevrolet vehicles.

14. On November 10, 1998, the Department of Justice ("DOJ') issued Letter 218 to offer guidance on a car dealership's obligation to provide hand controls so that individuals with mobility impairments could test drive vehicles.[1] The DOJ explained:

> Expense is one factor that may properly be weighed in determining whether it is readily achievable for GM dealerships to obtain and install hand controls in cars test driven by individuals with disabilities. Because of the relative low cost to a dealership of having a set of hand controls available for installation, it is unlikely that the expense of hand controls themselves would make their installation not readily achievable. A related issue is whether certain hand control devices cause damage, rendering test driven cars less valuable upon sale. It may not be readily achievable to install hand controls for test drives if those hand controls caused such damage.
>
> Safety considerations also may factor into the analysis.
>
> To the extent that certain vehicle models cannot safely be fitted with hand controls, provision of hand controls on those vehicles is not required. For a safety concern to be considered legitimate, it must be based on actual risks to the safe operation of the services provided.
>
> The time required to install hand controls and the availability of mechanics to perform the installation are other factors to be considered under the readily achievable standard. Unlike when renting cars, consumers normally do not make appointments in advance to visit car dealerships and test drive cars. However, an experienced mechanic generally takes only ten to fifteen minutes to install hand controls. A dealership that has trained mechanics on site during showroom hours likely could provide hand-controlled cars for a customer to test drive without any advance notice. The customer would simply have to wait for a short amount of time for

---

[1] https://www.justice.gov/crt/letter-218 (last visited June 29, 2022).

> the mechanic to install the hand controls on the car the customer desired to drive. If the customer wanted to test drive more than one car, he would have to wait while the mechanic removed the hand controls from the first car driven and then installed them on subsequent cars. In the case where a mechanic is not on site and available whenever a dealership showroom is open to customers, then hand-controlled test drives might only be readily achievable after some limited, legitimate amount of notice.

15. Chevrolet, the manufacturer of the vehicles sold by Defendant, explains their dedication to accessibility as follows:

    > For drivers with disabilities and their caregivers, mobility is key. That's why we're always looking for clever, purposeful solutions to help folks get through their everyday. But our journey is just beginning, with each innovation fueling our desire to make driving more accessible for all. Because everyone deserves to move confidently, with pride and peace of mind.[2]

16. Kerri W., An Infrastructure Delivery Manager for General Motors ("GM"), the company that manufactures Chevrolets, states that "By considering and valuing the needs of people with disabilities or those who care for someone with a disability, GM is giving people independence. That is the part that gets me excited!"[3]

17. Nonetheless, despite Chevrolet's enthusiastic commitment to making driving more accessible and giving people independence, Defendant has discriminated against MR. WOODS by refusing to remove barriers to accessibility so that MR. WOODS can test drive any of their vehicles prior to purchase.

---

[2] https://www.maguirechevroletofbaldwinsville.com/chevy-accessibility.htm (last visited Aug. 18, 2022).

[3] https://www.maguirechevroletofbaldwinsville.com/chevy-accessibility.htm (last visited Aug. 18, 2022).

### Mr. Woods Gave Defendant Notice that He Needed Hand Controls to Test Drive a Vehicle.

18. MR. WOODS has paraplegia because of a spinal cord injury and uses hand controls to operate a vehicle.

19. MR. WOODS is in the market to purchase a vehicle, so he contacted Maguire Chevrolet on June 23, 2022, to inquire about setting up a test drive.

20. MR. WOODS utilized the "Contact Us" option on Maguire Chevrolet's website and asked about coming in to test drive a vehicle. MR. WOODS also notified Maguire Chevrolet that he uses a wheelchair and asked if they had any hand controls.

21. Lexi Rodriguez, an employee of Maguire Chevrolet, responded to MR. WOODS' inquiry and sent the following emails:



22. By contacting Defendant through its online messaging system, MR. WOODS gave Defendant notice that he would need portable hand controls installed on any of the vehicles he wanted to test drive prior to going to Maguire Chevrolet's dealership.

23. Nonetheless, Defendant refused to provide MR. WOODS with hand controls so that he could test drive any of their vehicles.

24. Rather than providing MR. WOODS with portable hand controls, Defendant, through its employee, stated that they "would be happy to drop off the vehicle where the hand controls can be installed once purchased" but that "there are none available to take on a test drive."

25. Thus, MR. WOODS would not be able to test drive a vehicle from Defendant's dealership prior to purchasing a vehicle.

26. In the alternative, MR. WOODS would be required to spend hundreds of dollars to purchase portable hand controls and bring them to Defendant's dealership so he could test drive any of its vehicles. It is unclear whether Defendant would even permit MR. WOODS to bring his own portable hand controls so he could test drive a vehicle.

27. MR. WOODS was deterred from visiting Defendant's dealership because he knew he would be unable to test drive any of their vehicles.

**Installing Portable Hand Controls on a Vehicle for a Test Drive is Readily Achievable.**

28. Maguire Chevrolet is part of the Maguire Family of Dealerships, which is made up of thirteen dealership locations that collectively sell nineteen makes of vehicles.[4] Maguire

---

[4] https://www.maguirecars.com/ (last visited Aug. 18, 2022).

6

        Chevrolet's website boasts that it's service department has "ASE-certified and factory-trained technicians."[5]

29. Upon information and belief, portable hand controls can be easily and quickly installed in most vehicles.

30. Upon information and belief, the temporary installation of portable hand controls does not cause any damage to a vehicle.

31. Upon information and belief, portable hand controls can be purchased online for between $200.00 and $400.00.

32. Upon information and belief, portable hand controls can be installed and safely operated on Chevrolet vehicles.

33. Upon information and belief, mechanics or other staff working at Defendant's dealership know or should know how to properly install portable hand controls onto a Chevrolet vehicle.

34. Despite the relative ease of purchasing and installing portable hand controls, Defendant refused to provide MR. WOODS with portable hand controls so he could test drive any of its vehicles.

35. Defendant is part of a large family of car dealerships, and it would be relatively inexpensive for it to purchase a set of portable hand controls for its customers to use.

36. Defendant's technicians "understand every Chevy that comes through [its] doors"[6] and

---

[5] https://www.maguirechevroletofbaldwinsville.com/service.htm (last visited Aug. 18, 2022).
[6] https://www.maguirechevroletofbaldwinsville.com/service.htm (last visited Aug. 18, 2022).

therefore a service technician at Defendant's dealership should be able to install portable hand controls.

37. Nonetheless, Defendant insisted it did not have any vehicles with hand controls and that MR. WOODS would have to purchase a vehicle without being able to test drive it.

38. Defendant did not claim that installing portable hand controls would be unsafe, too expensive, damage the vehicle, or difficult to install.

## COUNT I - VIOLATION OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT

39. MR. WOODS realleges and reavers Paragraphs 1 - 38 as if they were expressly restated herein.

40. Defendant's dealership is a place of public accommodation, subject to the ADA, generally located at 112 Syracuse Street, Baldwinsville, New York 13204.

41. Maguire Chevrolet is located about sixty (60) miles away from MR. WOODS's home.

42. MR. WOODS has paraplegia because of a spinal cord injury and is a person with a disability within the meaning of 42 U.S.C. § 12102(2).

43. MR. WOODS desires to test drive a vehicle from Defendant's car dealership. MR. WOODS cannot operate a vehicle with his legs and requires hand controls to drive a vehicle.

44. The ADA requires public accommodations to remove barriers to access for persons with disabilities where it is readily achievable for them to do so 42 U.S.C. § 12182(b)(2)(A)(iv) and 28 C.F.R.§ 36.304.

45. The ADA also requires a public accommodation to make reasonable modifications to its

       policies and practices as necessary to afford its goods, services, facilities, privileges, advantages, or accommodations to persons with disabilities, as long as doing so does not fundamentally alter the nature of its goods, services, facilities, privileges, advantages, or accommodations, 42 U.S.C. § 12182(b)(2)(A)(ii) and 28 C.F.R. § 36.302.

46. The ADA prohibits public accommodations, including those operating car dealerships, from discriminating against an individual on the basis of disability in the full and equal enjoyment of its goods, facilities, privileges, advantages, accommodations, and services. 42U.S.C. § 12182(a); 28 C.F.R. § 36.201(a).

47. By failing to provide MR. WOODS with hand controls so he could test drive its vehicles, Defendant denied MR. WOODS equal access to its goods, privileges, accommodations, advantages, and services, in violation of 42 U.S.C. § 12182(a).

48. MR. WOODS plans to and will visit Defendant's dealership in the future as a patron.

49. MR. WOODS presently fears that he will encounter the barriers to access which exist at Defendant's dealership if he visits the dealership to test drive a vehicle in the near future.

50. MR. WOODS intends to and will visit Defendant's dealership to utilize the goods and services offered at the dealership, including test driving a vehicle, in the future but fears that the Defendant will continue to discriminate against him by failing to provide him with modifications so he can test drive any of its vehicles.

51. Upon information and belief, all barriers to access and ADA violations still exist and have not been remedied or altered in such a way as to effectuate compliance with the provisions of the ADA, even though removal is readily achievable.

52. Upon information and belief, removal of the discriminatory barriers to access at

Defendant's dealership is readily achievable, reasonably feasible, could be easily accomplished, and would not place an undue burden on Defendant.

53. Upon information and belief, removal of the barriers to access at Defendant's dealership would provide MR. WOODS with an equal opportunity to participate in, or benefit from, the goods, services, and accommodations offered to the general public at the dealership.

54. Upon information and belief, Defendant has failed to adopt any alternatives to barrier removal which would provide MR. WOODS with equal access to the accommodations which are offered for public use at the dealership.

55. Providing and installing portable hand controls in its vehicles so they can be test driven by individuals with disabilities is readily achievable by Defendant because portable hand controls are inexpensive, easy to install, and do not cause any damage to a vehicle.

56. MR. WOODS has retained the undersigned counsel and is entitled to recover reasonable attorneys' fees, costs and litigation expenses from Defendant pursuant to 42 U.S.C. § 12205.

**COUNT II - VIOLATION OF NEW YORK STATE HUMAN RIGHTS LAW**
**(NEW YORK STATE EXECUTIVE LAW, §§ 296-297)**

57. MR. WOODS hereby incorporates by reference all allegations contained in all preceding paragraphs of this Complaint as if they were expressly set forth herein.

58. As the owner, manager, lessee, and/or proprietor of a place of public accommodation within the jurisdiction of the State of New York, Defendant is obligated to comply with the provisions of the NYSHRL, N.Y. Exec. Law § 296(2).

59. N.Y. Exec. Law § 296(2) provides: "It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of

any place of public accommodation, . . . because of the . . . disability . . . of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

60. The conduct alleged herein discriminates against MR. WOODS on account of his disability.

61. The conduct alleged herein violates the NYSHRL, N.Y. Exec. Law § 296(2).

62. Defendant has violated the NYSHRL by depriving MR. WOODS of the full and equal enjoyment of the accommodations, advantages, facilities, and privileges offered at the Defendant's dealership, namely the ability to test drive one of its vehicles prior to purchase.

63. Defendant has violated the NYSHRL by failing to remove the barriers to access and make reasonable modifications at its dealership.

64. Upon information and belief, removal of the discriminatory barriers to access at Defendant's dealership is readily achievable, reasonably feasible, could be easily accomplished, and would not place an undue burden on Defendant.

65. Defendant's conduct has resulted in a cognizable injury to MR. WOODS.

66. MR. WOODS has been damaged and will continue to be damaged by this discrimination as more fully set forth above.

67. As a direct and proximate result of Defendant's unlawful discrimination in violation of the NYSHRL, MR. WOODS has suffered mental anguish, inconvenience, emotional distress, frustration, anxiety, humiliation, loss of autonomy, and an invasion of his civil rights.

68. MR. WOODS prays for judgment for damages to pursuant to N.Y. Exec. Law § 297(4), and all other relief allowed by law.

## COUNT III - VIOLATION OF NEW YORK STATE CIVIL RIGHTS LAW
## (N.Y. Civ. Rights §§ 40-c and 40-d)

69. MR. WOODS hereby incorporates by reference all allegations contained in all preceding paragraphs of this Complaint as if they were expressly set forth herein.

70. As the owner, manager, lessee, and/or proprietor of a place of public accommodation within the jurisdiction of the State of New York, Defendant is obligated to comply with the provisions of the NYSCRL, N.Y. Civ. Rights § 40 *et seq*.

71. MR. WOODS has complied with the notice requirements of N. Y. Civ. Rights § 40-d, as notice of this action was served upon the attorney general prior to or concurrently with the initiation of this suit.

72. Section 40 of the NYSCRL states that "All persons within the jurisdiction of this state shall be entitled to the full and equal accommodations, advantages, facilities and privileges of any places of public accommodations. . . ."

73. Section 40-c of the NYSCRL states that "[n]o person shall, because of . . . disability . . . be subjected to any discrimination in his or her civil rights . . . by any firm, corporation or institution. . . ."

74. The conduct alleged herein discriminates against MR. WOODS on account of his disability.

75. The conduct alleged herein violates the NYSCRL.

76. Defendant has violated the NYSCRL by depriving MR. WOODS of the full and equal enjoyment of the accommodations, advantages, facilities, and privileges offered by Defendant at its dealership, namely the ability to test drive any of its vehicles.

77. Defendant has violated the NYSCRL section 40-c, *inter alia*, by subjecting MR. WOODS,

12

as a person with a disability, to discrimination in his civil rights.

78. Defendant has further violated the NYSCRL by being in violation of the rights provided under the ADA and the New York State Human Rights Law, N.Y. Exec. Law § 296.

79. Defendant's conduct has resulted in a cognizable injury to MR. WOODS.

80. MR. WOODS has been damaged and will continue to be damaged by this discrimination as more fully set forth above.

81. MR. WOODS prays for judgment pursuant to N.Y. Civ. Rights section 40-d, including statutory damages, and all other relief allowed by law.

WHEREFORE, MR. WOODS demands judgment against Defendant, and requests the following relief:

A. That this Court declare that Defendant is in violation of the ADA, NYSHRL, and NYSCRL;

B. That this Court enter an Order directing Defendant to provide portable hand controls or other adaptive driving devices to individuals with disabilities requesting such accommodations at no cost to the customer;

C. That this Court enter an Order awarding MR. WOODS compensatory damages, as provided for in N.Y. Exec. Law § 297(4);

D. That this Court enter an Order awarding MR. WOODS statutory damages, as provided for in N.Y. Civ. Rights section 40-d;

E. That this Court award reasonable attorneys' fees, costs (including expert fees), and other expenses of suit, to MR. WOODS, pursuant to 42 U.S.C. § 12205; and

F. That this Court award such other and further relief as it deems necessary, just and proper.

Respectfully Submitted,

BIZER & DeREUS, L.L.C.
Attorneys for Plaintiff
Andrew D. Bizer (NY Bar # 4208955)
andrew@bizerlaw.com
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996

By: /s/ Andrew D. Bizer
    Andrew D. Bizer